[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

FILED
10/19/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

RECEIVED

OCT 13 2022

THOMAS G BRUTON
CLERK, U.S DISTRICT COURT



Carlton Theodore Landis

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

Correctional Officer Shellhammer

Correctional Officer Heim (Derrick Heim)

Correctional Officer Nayda

Lieutenant Williams

Lieutenant Kietzman

Nurse Bice (Kristin Bice)

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

Case No: **20-cv-50447**
(To be supplied by the Clerk of this Court)

Amended Complaint

**CHECK ONE ONLY:**      <u>**AMENDED COMPLAINT**</u>

_____     **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983 U.S. Code** (state, county, or municipal defendants)

  ✓     **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE 28 SECTION 1331 U.S. Code** (federal defendants)

  ✓     **OTHER** (cite statute, if known) 42 USC 1985 and 1986; 5 USC 551, et seq.; 28 USC 2201 and 2302

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

1 of 27

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**I.    Plaintiff(s):**

    A.    Name: Carlton Theodore Landis

    B.    List all aliases: Carlton Theodore Landers

    C.    Prisoner identification number: 24449-056

    D.    Place of present confinement: USP-McCreary

    E.    Address: P.O. Box 3000, Pine Knot, Kentucky 42635

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

**II.    Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank.  Space for two additional defendants is provided in **B** and **C**.)

    A.    Defendant: Correctional Officer Shellhammer

           Title: Correctional Officer

           Place of Employment: AUSP-Thomson

    B.    Defendant: Correctional Officer Heim

           Title: Correctional Officer

           Place of Employment: AUSP-Thomson

    C.    Defendant: Correctional Officer Nayda

           Title: Correctional Officer

           Place of Employment: AUSP-Thomson

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2 of 27

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**III.** **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: Landis v. Martin, et al; 19-CV-177-DPJ-FKB

B. Approximate date of filing lawsuit: March 15, 2019

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: Carlton Theodore Landis

D. List all defendants: Martin, Singleton, Curry, Evans, Taylor, Crimaldi, Lott, Rogers

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): Southern District of Mississippi

F. Name of judge to whom case was assigned: Daniel P. Jordan

G. Basic claim made: Retaliatory Placement in segregation and denial of medical care.

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Case was dismissed.

I. Approximate date of disposition: Oct. 4, 2020

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IV.    Statement of Claim:

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

1. On October 10, 2019, Defendant Shellhammer ("Shellhammer") escorted Plaintiff, who was restrained with handcuffs attached to a waist chain, to the medical department to get Plaintiff's blood drawn.

2. When Plaintiff and Shellhammer arrived to the medical department, Nurse Kristin Bice ("Bice") and Phlebotomist Heather Dann ("Dann") were present.

3. Dann withdrew some of Plaintiff's blood and, afterwards, Shellhammer escorted Plaintiff out of the medical department.

4. En route to Plaintiff's housing unit, Shellhammer rammed Plaintiff's head against the wall and slammed Plaintiff on the ground.

5. Plaintiff asked Shellhammer why he was assaulting Plaintiff and Shellhammer said he was assaulting Plaintiff because Plaintiff had exposed himself to Dann and Correctional Officer Hernandez about a month earlier, which was why he had to escort Plaintiff to the medical department instead of allowing Dann to come to Plaintiff's cell.

6. Shellhammer called for backup while he had Plaintiff restrained on the ground, and Correctional Officer Heim ("Heim") and Correctional Officer Nayda ("Nayda") came and jumped on top of Plaintiff.

4 of 27

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

7. While on top of Plaintiff, Shellhammer, Heim, and Nayda repeatedly punched Plaintiff in the head and face while chiding ("This is the stupid nigger that likes exposing himself to female staff.") Plaintiff for exposing himself to Dunn and Correctional officer Hernandez ("Hernandez").

8. After Shellhammer, Heim, and Nayda stopped punching Plaintiff, they saw Plaintiff's blood on the floor and one of them inquired as to where the blood was coming from, to which Shellhammer replied that the blood came from him "smashing" Plaintiff's head against the wall; Heim, Nayda, and Shellhammer laughed at Shellhammer's response.

9. Plaintiff suffered a gash above his left eye as a consequence of Shellhammer "smashing" Plaintiff's head against the wall.

10. Lieutenant Kietzman also responded to Shellhammer's call for backup, and without even inquiring about what had happened, Lieutenant Kietzman ("Kietzman") ordered Heim, Shellhammer, and Nayda to put Plaintiff in the most restrictive form of ambulatory restraints.

11. While putting Plaintiff in the most restrictive form of ambulatory restraints, Heim applied Plaintiff's hand restraints extremely tight, causing Plaintiff to experience immediate pain to his wrists.

12. Plaintiff immediately asked Kietzman, Shellhammer, Nayda, and Heim to loosen the hand restraints, as they were causing Plaintiff undue pain and cutting off Plaintiff's blood circulation.

13. Kietzman, Shellhammer, Nayda, and Heim refused to loosen the hand

5 of 27

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**V.    Relief:**

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.

Nominal damages to whatever extent the Court deems appropriate; Compensatory damages in the amount of $50,000; Punitive damages in the amount of $100,000; Plaintiff's costs of suit; any other relief the Court deems appropriate; injunctive and/or declaratory relief against the Bureau of Prisons to compel the Bureau of Prisons to comply with its policy and regulations in regard to the use of force and application of restraints.

**VI.    The plaintiff demands that the case be tried by a jury.   ☑ YES   ☐ NO**

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief.  I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this ___1st___ day of ___Oct.___, 20 __22__

_____

(Signature of plaintiff or plaintiffs)

Carlton Theodore Landis
(Print name)

24449-056
(I.D. Number)
USP- McCreary

P.O. Box 3000

Pine Knot, Kentucky  42635
(Address)

6 of 27

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

restraints even though they saw the restraints were too tight.

14. After being placed in the most restrictive form of ambulatory restraints, Plaintiff was escorted to the medical department for a medical assessment.

15. Bice conducted the medical assessment.

16. During the medical assessment Plaintiff complained that his hand restraints were too tight, but Kietzman, Heim, Shellhammer, Nayda, and Bice ignored Plaintiff.

17. During the medical assessment, Bice bandaged the gash above Plaintiff's left eye.

18. Toward the end of the medical assessment, Kietzman told Bice to check the restraints, and Bice responded by lightly and quickly patting Plaintiff's hands with her hands and saying the restraints were fine.

19. After the medical assessment was completed, Plaintiff was escorted to a "restraint cell", where Plaintiff was maintained in the most restrictive form of ambulatory restraints for approximately five hours.

20. During the five hours that Plaintiff was confined in the restraint cell, Lieutenant Williams ("Williams"), Kietzman, Shellhammer, and Heim conducted 2-hour restraint checks on Plaintiff.

21. During the 2-hour restraint check, Heim told Plaintiff to stand up while Plaintiff complained to Williams that the hand restraints

were too tight; After Plaintiff stood up, Heim tightened Plaintiff's handcuffs and waist chain causing Plaintiff to holler in pain. Then Williams and Heim pushed Plaintiff on the bed and proceeded to call Plaintiff a "stupid nigger", "spook", and "coon". Shellhammer stated that they always had to put black people in restraints for exposing themselves to female staff, and that he did not understand why black people were muslim. Williams stated that he knew Plaintiff believed he was a "little devil" and that he was going to show Plaintiff what a devil he really was. Then Williams approached Plaintiff and spit in Plaintiff's face and said "fuck Farrakhan". Heim snatched the bandage off of Plaintiff's left eye and pushed plaintiff backwards causing Plaintiff's head to hit the wall.

22. During the 2-hour restraint check, Kietzman, Williams, Shellhammer, and Heim saw that Plaintiff's hands were swollen like balloons, that Plaintiff's wrists and face were oozing blood, that any slight movement by Plaintiff caused Plaintiff to holler in pain, and that Plaintiff had urinated on himself due to the tightness of the restraints which caused excruciating pain when Plaintiff tried to stand up. Despite seeing — and Plaintiff complaining to them — Plaintiff's obvious pain and discomfort, Kietzman, Williams, Shellhammer, and Heim refused to assist Plaintiff. Kietzman told Plaintiff that the more he complained about his injuries and

8 of 27

restraints, the longer he would keep Plaintiff in restraints.

23. While Plaintiff was confined in the restraint cell, the pain caused by the overly tightened restraints became unbearable, causing Plaintiff to repeatedly holler and bawl in pain for help. During this agony Plaintiff heard and saw Heim and Hernandez laughing at Plaintiff while responding to Plaintiff's pleas for help by yelling to Plaintiff that he was getting what he deserved.

24. While Plaintiff was confined in the restraint cell, Bice and Nurse Garcia ("Garcia") walked by Plaintiff without responding to Plaintiff's pleas for them to loosen Plaintiff's restraints and to tend to Plaintiff's aggravated facial and carpal injuries, which were becoming progressively more severe in pain and physical magnitude. The longer Plaintiff remained in the overly tightened restraints, the more the restraints kept digging into Plaintiff's skin, exacerbating Plaintiff's carpal injuries and waist injuries.

25. While Plaintiff was confined in the restraint cell, Plaintiff overheard inmates say that someone from the Regional Office was in the unit. In response, Plaintiff inched his way to the cell door, while experiencing excruciating pain due to the movement of the overly tightened restraints on Plaintiff's limbs, and pled for help from a woman standing in the front of the unit dressed in a suit. Upon hearing Plaintiff's plea for help, the woman

hurriedly left the unit.

26. Several minutes after the woman left the unit, Kietzman came inside the restraint cell and loosened Plaintiff's leg restraints, even though Plaintiff informed him, and he could obviously see, that Plaintiff's waist and hand restraints were too tight, not Plaintiff's leg restraints. Plaintiff pled with Kietzman to loosen the waist and hand restraints, but he refused, saying that he would let Plaintiff out of restraints when he returned.

27. Kietzman returned thirty minutes later and released Plaintiff from restraints.

28. During the five hours that Plaintiff was in overly tightened restraints, Bice and Garcia did not perform a medical restraint check on Plaintiff in order to ascertain if Plaintiff had acquired new injuries or if his old injuries had become worse.

29. Due to Plaintiff being held in overly tightened restraints for five hours, Plaintiff suffered severe numbness (nerve damage), swelling, bruising, gashing, discoloration, and pain to his hands, wrists, and ankles.

30. After Plaintiff was released from restraints, Plaintiff submitted several sick-call request forms to Bice and Garcia in regard to the injuries Plaintiff received on October 10, 2019.

31. When Plaintiff inquired about the status of his sick-call requests, Health Service Administrator Pence told Plaintiff that

the medical department never received the sick-call requests.

32. When Plaintiff spoke to Bice about the sick-call requests, she told Plaintiff that she would not involve herself with providing treatment for restraint-related injuries, as she would be going against her coworkers.

33. When Plaintiff spoke to Health Service Administrator Pence ("Pence") about the injuries Plaintiff received on October 10, 2019, Pence told Plaintiff that he would be seen by someone within a couple of weeks; However, Plaintiff was never seen.

34. Seeing that Pence, Bice, and Garcia had no plan to assist Plaintiff in receiving treatment for his injuries, Plaintiff filed a grievance to the warden, who responded by saying that Plaintiff was scheduled to be seen soon.

35. After the warden's claim, that Plaintiff would be seen soon, did not come to fruition, Plaintiff filed a grievance to the regional office of the Bureau of Prisons, which also claimed that Plaintiff would be seen soon.

36. Nurse Practitioner Ross ("Ross") fabricated a medical document ("Clinical Encounter Sheet") in order to make it appear that she had seen Plaintiff in regard to his injuries when she had not seen Plaintiff.

37. Plaintiff continued to complain and file grievances to prison officials about his continuing injury to his wrist, which

which compelled Ross and a Physician Assistant (name unknown) to see Plaintiff in regard to his restraint-related injuries — four months after he was first injured.

38. During the belated clinical encounter with Ross and the Physician Assistant ("PA"), the PA told Plaintiff that he had carpal nerve damage but that there was nothing he could do about it because it would require surgery to fix which he doubted the BOP would pay for. The PA told Plaintiff that time would probably fix it.

39. Ross fabricated the clinical encounter (see para. #36) in order to try to hide the fact that Plaintiff suffered nerve damage due to restraints.

40. Shellhammer fabricated an incident report against Plaintiff, claiming that Plaintiff attempted to assault him, in order to justify inflicting injury and pain on Plaintiff by causing and, thereafter, ignoring Plaintiff's injuries.

41. Williams and Kietzman fabricated 2-hour restrain-check forms, claiming that Plaintiff was unruly while in restraints, in order to justify inflicting injury and pain on Plaintiff by causing and, thereafter, ignoring Plaintiff's injuries.

42. Shellhammer, Heim, and Nayda and Hernandez ~~fabricated restrain-check~~ staff memos, 15-minute restraint-check forms, claiming that Plaintiff was unruly before and after being placed in restraints,

in order to justify inflicting injury and pain on Plaintiff by causing and, thereafter, ignoring Plaintiff's injuries.

43. Bice fabricated medical assessment forms, claiming that Plaintiff's restraints were properly applied, in order to justify inflicting injury and pain on Plaintiff by causing and, thereafter, ignoring Plaintiff's injuries.

44. The excessive tightness of Plaintiff's hand and waist restraints was a serious medical condition.

45. The Defendants (Shellhammer, Heim, Nayda, Kietzman, Williams, Bice, Garcia, Pence, Ross, Hernandez) refusal to provide for the treatment of Plaintiff's serious medical condition caused the condition to worsen (bruising, blistering, discoloration, swelling, numbness (nerve damage) to Plaintiff's wrists, hands, and waist).

46. Plaintiff suffered, and continues to suffer from, extreme mental and emotional distress due to the acts and omissions of Shellhammer, Heim, Nayda, Kietzman, Williams, Bice, Garcia, Pence, Ross, and Hernandez.

47. Due to the acts and omissions of Shellhammer, Heim, Nayda, Kietzman, Williams, Bice, Garcia, Pence, Ross, and Hernandez, Plaintiff suffers from permanent nerve damage to his left wrist and hand, which extends from his left wrist up to his left thumb and forefinger.

48. Defendants Shellhammer, Heim, Nayda, and Kietzman

were unjustified in putting Plaintiff in prolonged ambulatory restraints, as Plaintiff had not displayed any signs of imminent violence before or during the initial restraint placement.

49. Defendants Shellhammer, Heim, Nayda, Kietzman, and Bice knew that they were putting Plaintiff in prolonged ambulatory restraints in a manner that would cause pain, injury, and suffering to Plaintiff.

50. Defendants Shellhammer, Heim, Nayda, and Kietzman were required to place Plaintiff in the least restrictive form of ambulatory restraints, yet they used the most restrictive form of ambulatory restraints.

51. Defendants Shellhammer, Heim, Nayda, Kietzman, and Bice were required to place Plaintiff in soft restraints, yet they used hard restraints.

52. Defendants Shellhammer, Heim, Nayda, Kietzman, Williams, and Bice conspired to unjustly place and maintain Plaintiff in the most restrictive form of ambulatory restraints, which were maliciously and sadistically tightened, in order to inflict corporal punishment on Plaintiff on account of his race and for exposing himself to female staff.

53. Defendants Shellhammer, Heim, Nayda, Kietzman, Bice, Garcia, Williams, Pence, Ross, Hernandez, and the BOP conspired with each other to deprive Plaintiff of equal protection of the law — as guaranteed by the Fifth Amendment (Equal Protection), 18 USC 4042(a)(2)

and (3), and 28 CFR 552.20-27 — by (1) fabricating government documents in order to justify placing and maintaining Plaintiff in restraints, (2) using force on, and applying restraints to, Plaintiff in an illicit manner on October 10, 2019, and (3) deliberately ignoring the pain, injury, and suffering caused to Plaintiff by their malicious and sadistic acts, and/or (4) utilizing racially-charged, verbal tripes towards Plaintiff in order to degrade and humiliate Plaintiff because of his African ancestry.

54. Plaintiff was similarly situated with white inmates at AUSP-Thomson and throughout the BOP who (a) purportedly or actually violated BOP rules and regulations and/or (b) were placed and maintained in physical restraints.

55. Plaintiff was treated differently than similarly situated white inmates at AUSP-Thomson and throughout the BOP.

56. The acts and omissions of the Defendants (Shellhammer, Heim, Nayda, Kietzman, Bice, Garcia, Williams, Pence, Ross, and Hernandez) in regard to the illicit use of force and application of restraints on Plaintiff, as described above, represent a pattern or practice of BOP officials at AUSP-Thomson and other BOP facilities.

57. The pattern or practice of BOP officials in regard to the use of force and application of restraints has had the effect of discriminating on black inmates such as Plaintiff.

58. The broad objective of these BOP officials, in executing

15 of 27

their malicious and sadistic use of force and application of restraints, was/is to inflict corporal punishment on black inmates, such as Plaintiff, who engage in actions or behaviors (arguing with whites, refusing cell assignments issued by whites, exposing themselves to white woman, etc.) that personally displease these white BOP officials.

59. Since Plaintiff has been incarcerated under the care of the BOP, he has experienced and witnessed — at AUSP-Thomson, USP-Lewisburg, USP-Allenwood, USP-Yazoo City, USP-Victorville, USP-Coleman, USP-McCreary, USP-Atlanta, USP-Marion, USP-Leavenworth, FCI-Bennettsville, FCI-Pollock, and FCI-Petersburg — BOP prison officials engage in the same malicious and sadistic practices described above (1-58).

60. The pain, injury, and suffering that Plaintiff was subject to, as described above (1-59), is consistent with an institutionalized practice of AUSP-Thomson and other BOP facilities, which was known to and ratified by the BOP.

61. Despite knowledge of these institutionalized practices, the BOP has at no time taken any effective action to prevent BOP personnel from continuing to engage in the malicious and sadistic use of force and application of restraints.

62. The BOP had prior notice of the vicious propensities of BOP personnel in regard to the illicit use of force and application

of restraints, but it took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority.

63. The failure of the BOP to properly train BOP personnel included the failure to instruct them in the proper and prudent use of force and application of restraints, as outlined in 28 CFR 552.20-27 and Program Statement 5566.06.

64. The BOP is engaged in the malicious and sadistic practice of deliberately shirking Use of Force and Application of Restraints policy, in order to inflict corporal punishment on black inmates (such as Plaintiff), by (a) not utilizing soft restraints, (b) utilizing the most restrictive form of ambulatory/four-point restraints as an initial measure, (c) manipulating restraint-check forms in order to justify keeping inmates in restraints longer than necessary, (d) tightening restraints so as to deliberately cause pain, injury and suffering, (e) not feeding inmates while in restraints, (f) not allowing inmates to use the bathroom while in restraints, (g) not allowing inmates to rotate positions while in restraints, (h) assaulting inmates, and (i) unjustly putting and maintaining inmates in restraints.

65. Plaintiff exhausted his administrative remedies with the BOP in regard to the restraint-related violations mentioned above (paras. 1-64).

66. The BOP denied Plaintiff's grievances in regard to

17 of 27

these restraint-related violations, claiming that the BOP officials were not violating policy.

67. As a consequence of the BOP denying the grievances, Plaintiff was subjected to the restraint-related violations on numerous occasions thereafter.

68. As the BOP denied these grievances at the institutional-, regional-, and central-office levels, it marked the consummation of the BOP's decision-making process, and thus is a final agency action.

## Federal Theories of Recovery

## A. Bivens

69. Plaintiff is suing all (save the BOP) of the Defendants in their individual capacity for violating Plaintiff's Eighth Amendment rights by showing deliberate indifference to Plaintiff's pain, injury, and suffering provoked by their malicious and sadistic use of force and application of restraints.

70. Plaintiff only seeks monetary damages from these Defendants as it pertains to this Bivens claim.

## B. 42 USC 1985(3), 1986

71. Plaintiff is suing all (save the Bureau of Prisons) of the Defendants in their individual capacity for depriving Plaintiff of equal protection of the laws based on his race and religion.

72. "Equal protection of the laws" pertains to Plaintiff's Fifth Amendment right to due process and equal protection; his Eighth Amendment right to be free from cruel and unusual punishment; and his rights that stem from 18 USC 4042 (a) (2) and (3) and 28 CFR 552. 20-27.

73. Plaintiff only seeks monetary damages from these Defendants as it pertains to these conspiracy claims.

## C. Administrative Procedure Act (APA)

74. Plaintiff is only suing the BOP in its official capacity pursuant to the APA.

75. Plaintiff seeks judicial review, pursuant to 5 USC 706 (1) and (2)(A) - (D), of the BOP's acts and omissions (see para. #64 above).

76. Plaintiff is claiming that the BOP's acts and omissions violate (a) Plaintiff's Fifth (due process and equal protection) and Eighth (deliberate indifference and excessive force) Amendment rights,

which justifies this Court's intervention via the APA.

77. Plaintiff also seeks to have this Court compel the BOP to utilize a videocamera during two-hour restraint checks to evidence Plaintiff's, and other inmates', demeanor while in restraints, which will deter BOP officials from manipulating restraint-check forms about Plaintiff's, and other inmates', demeanor while in restraints.

## D. Declaratory Judgment

78. Plaintiff is suing the BOP in its official capacity for declaratory relief.

79. Plaintiff seeks to have this Court declare what Plaintiff's rights are in regard to the use of force and application of restraints, as it pertains to the Defendants' acts and omissions mentioned above (see para. #64 above)

80. The BOP's acts and omissions, as described above, violate(d) Plaintiff's Fifth (due process and equal protection) and Eighth (deliberate indifference and excessive force) Amendment rights.

## F. Injunctive Relief (Nonstatutory)

81. Plaintiff is suing the BOP in its official capacity for

nonstatutory injunctive relief.

82. Plaintiff seeks injunctive relief to compel the BOP to perform all non-discretionary acts outlined in the "Use of Force and Application of Restraints" rules and regulations, 28 CFR 552.20-27, which the BOP has repeatedly failed to perform. (See Para. 64 above ; Paras. 1-64)

83. Plaintiff also seeks injunctive relief to compel the BOP to utilize a videocamera during two-hour restrain-checks to evidence Plaintiff's, and other inmates', demeanor while in restraints, which will help prevent BOP officials from manipulating restraint-check forms about Plaintiff's, and other inmates', demeanor while in restraints.

84. The BOP's acts and omissions (see paras. 1-64 above) Violate(d) Plaintiff's fifth (due process and equal protection) and Eighth (deliberate indifference and excessive force) Amendment rights.

## G. Exception to Mootness Doctrine

85. Plaintiff has been transferred from AUSP-Thomson and currently resides at USP-McCreary.

86. Despite Plaintiff's transfer from AUSP-Thomson,

the BOP's acts and omissions, as described above, are capable of repetition, yet evading review.

87. Plaintiff has been placed in restraints, in a manner that blatantly violates BOP regulations and policy, on about 15 different occasions at four federal prisons (USP-Yazoo City, USP-Allenwood, USP-Lewisburg, USP-Thomson) since 2016.

88. Each time that Plaintiff was placed in restraints, he remained in restraints for 36 hours or less.

89. Plaintiff has experienced and witnessed, since he was sent to the United States Penitentiary in 2016, BOP officials engage in a pattern or practice of utilizing force and the application of restraints as corporal punishment on Plaintiff and other inmates, in a manner that violates BOP regulations. (See paras. 1-64 above)

90. Every time that Plaintiff was placed in restraints, BOP officials subjected Plaintiff to the illicit use of force and application of restraints in a manner described in paragraph #64 above.

91. BOP officials subjected Plaintiff to the illicit use of force and application of restraints whenever Plaintiff engaged in acts or behaviors BOP officials did not like, such as arguing with staff, refusing cell assignments, disobeying orders, etc.

92. Everytime Plaintiff has filed grievances concerning the illicit use of force and application of restraints, the BOP has justified BOP officials' actions, leading to Plaintiff being subjected to the deprivation over and over again.

93. The illicit use of force and application of restraints occurs more frequently in the United States Penitentiaries, where "high-risk inmates" are more likely to engage in conduct that displeases BOP officials.

94. Because the illicit use of force and application of restraints is linked to inmate behavior, and because Plaintiff has a lengthy history of disciplinary reports which will keep Plaintiff confined in the United States Penitentiary for the rest of his sentence, it is very likely that Plaintiff will be subjected to the illicit practice in the future if this Court does not intervene.

95. Because Plaintiff remained in restraints 36 hours or less each time he was placed in restraints, the illicit practice evades review.

## Caption (cont.)

Nurse Vanessa Garcia
Nurse Practicioner Ross
Correctional Officer Maddie Hernandez
Bureau of Prisons

## II. Defendants (Cont.)

D. Lieutenant Williams
   Lieutenant
   AUSP-Thomson

E. Lieutenant Kietzman
   Lieutenant
   AUSP-Thompson

F. Kristen Bice
   Nurse

AUSP-Thomson

G. Vanessa Garcia
   Nurse
   AUSP-Thomson

H. HSA Pence
   Health Service Administrator
   AUSP-Thomson

I. Maddie Hernandez
   Correctional Officer
   AUSP-Thomson

J. NP Ross
   Nurse Practitioner
   AUSP-Thomson

K. Bureau of Prisons
   Agency
   Washington, DC

III. Previous Lawsuits (Cont.)

25 of 27

A. Landis v. Ebbert, 19-CV-477

B. March 15, 2019

C. Carlton Theodore Landis

D. Ebbert, Steese, Savidge, Hackenburg, Bureau of Prisons, Connors, Ormond, Sienkiewicz

E. Middle District of Pennsylvania

F. Christopher C. Connor

G. Unwarranted denial of recreation; excessive force

H. Pending

I. Pending


A. Landis v. Lieutenant Wilson, 19-CV-1301

B. June 15, 2019

C. Carlton Theodore Landis

D. Wilson, Beachel, Troutman, Saylor, Leonawicz, Hurwitz, Bureau of Prisons, Dees, Ayers

E. Middle District of Pennsylvania

F. Christopher C. Conner

G. Illicit use of force and application of restraints

H. Pending

I. Pending


A. Landis v. Bureau of Prisons, 19-CV-50290

26 of 27

B. October 31, 2019

C. Carlton Theodore Landis

D. Bureau of Prisons, Executive Office of United States Attorneys, A.T.F.

E. Northern District of Illinois

F. Phillip G. Reinhard

G. Freedom of Information Act

H. Pending

I. Pending


A. Landis v. Warden Rivers, 20-CV-50168

B. June 20, 2020

C. Carlton Theodore Landis

D. Rivers, Doerer

E. Northern District of Illinois

F. Ian D. Johnston

G. Failure to protect

H. Pending

I. Pending


A. Landis v. Lieutenant Murton, 19-CV-50257

B. October 15, 2019

C. Carlton Theodore Landis

D. Murton, Erskine, Maybury, Bureau of Prisons, Rivers

E. Northern District of Illinois

F. Ian D. Johnston

G. Illicit use of force and application of restraints

H. Pending

I. Pending