## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| CARLTON THEODORE LANDIS (#24449-056), | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO. 20 CV 50447 |
| | ) | |
| V. | ) | |
| | ) | HON. IAIN D. JOHNSTON |
| CORR. OFFICER SHELLHAMMER, ET AL., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Carlton Landis, a federal prisoner, brings this *pro se* civil rights action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), 28 U.S.C. § 1331, the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the Civil Rights Act, 42 U.S.C. §§ 1985 and 1986.  Plaintiff claims that correctional officers at the U.S. Penitentiary in Thomson, Illinois, violated his constitutional rights and federal regulations by using excessive force against him, by acting with deliberate indifference to his medical needs, and by conspiring against him on account of his race.  Plaintiff contends that officers administered a beating because he had allegedly exposed himself to prison employees on a previous occasion.  Plaintiff additionally maintains that prison nurses turned a blind eye to his overly tight restraints, and that the Bureau of Prisons in general, does not properly train its officers in the use of force or ambulatory restraints.  Plaintiff seeks compensatory and punitive damages, and declaratory and injunctive relief.  This matter is before the Court for ruling on Defendants' motions to dismiss.  For the reasons stated in this opinion, their motions are granted in part and denied in part.  All claims save Plaintiff's *Bivens* medical claim are dismissed.

## I.    <u>Legal Standard on a 12(b)(6) Motion to Dismiss</u>

Courts must liberally construe *pro se* complaints and hold them "to a less stringent standard than pleadings drafted by lawyers." *Cooper v. Hain*, No. 21-CV-03687, 2023 WL 4365848, at *1 (N.D. Ill. July 6, 2023) (citing *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017)). The purpose of the complaint is "to provide a defendant with fair notice of the claims against him." *Ali v. City of Chicago*, 34 F.4th 594, 602 (7th Cir. 2022) (quoting *Hahn v. Walsh*, 762 F.3d 617, 632 (7th Cir. 2014)); see also *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the Court assumes all factual allegations in the complaint to be true, viewing all facts—as well as any inferences reasonably drawn therefrom—in the light most favorable to the plaintiff. *Twombly,* 550 U.S. at 563; *Degroot v. Client Servs., Inc.*, 977 F.3d 656, 659 (7th Cir. 2020) (same) A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *G.G. v. Salesforce.com, Inc.*, No. 22-2621, 2023 WL 4944015, at *3 (7th Cir. Aug. 3, 2023); *Twombly*, 550 U.S. at 556.

Nevertheless, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Twombly* at 555; *Kaminski v. Elite Staffing, Inc.*, 23 F. 4th 774, 776 (7th Cir. 2022). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly* (citations omitted); *Bell v. City of Country Club Hills*, 841 F.3d 713, 717 (7th Cir. 2016); *Mathews v. Revolve Cap. Grp. LLC*, No. 20 CV 3605, 2021 WL 7179028, at *2 (N.D. Ill. Feb. 12, 2021). The courts "do not credit legal conclusions, or '[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements.'" *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). "'A claim has facial plausibility when ... [it] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hess* at 758 (quoting *Iqbal* at 678). To assess whether a complaint states a plausible claim of relief, the Supreme Court articulated a two-pronged approach in which a court (1) first identifies the well-pleaded factual allegations by discarding the pleadings that are "no more than conclusions" and (2) then determines whether the remaining well-pleaded factual allegations "plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679; *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016); *Buchanan v. Pfister*, No. 17 CV 8075, 2018 WL 4699778, at *2 (N.D. Ill. Oct. 1, 2018).

## II.    <u>Allegations</u>

Plaintiff Carlton Landis is a federal prisoner, confined at the Thomson Administrative Penitentiary at all times relevant to this lawsuit. (Dkt. 1, Complaint, p. 3.) Defendants Shellhammer, Heim, Nayda, and Hernandez are Thomson correctional officers. (Dkt. 18, Amended Complaint, p. 2; p. 25, ¶ I.) Defendants Kietzman and Williams are correctional lieutenants. (*Id.*, p. 25, ¶¶ D, E.) Defendants Bice and Garcia are prison nurses. (*Id.*, pgs. 24-25, ¶¶ F, G.) Defendant Pence is the health services administrator at Thomson. (*Id.*, p. 25, ¶ H.) Defendant Ross was a nurse practitioner at the prison at the time of the events giving rise to this

action.[1]   (*Id.*, p. (*Id.*, p. 25, ¶ J.)   Plaintiff also sues the Bureau of Prisons itself.

Plaintiff makes the following factual allegations, assumed true for purposes of the motions to dismiss:   On October 10, 2019, Defendant Shellhammer escorted Plaintiff to AUSP-Thomson's medical department to have blood drawn.   (*Id.*, p. 4, ¶ 1.)   Plaintiff was wearing full restraints (handcuffs attached to a waist chain).   (*Id.*)

The party reached the medical unit to find there Defendant Bice, a nurse, and a phlebotomist (Dann, who is not a named Defendant).   (*Id.*, ¶ 2.)   Dann drew blood from Plaintiff, after which he was sent back to his housing unit.   (*Id.*, ¶ 3.)

On the way back to the housing unit, Shellhammer suddenly rammed Plaintiff's head against the wall, and then slammed him to the ground.   (*Id.*, ¶ 4.)   When Plaintiff asked Shellhammer why he was attacking him, the officer responded that he was meting out punishment because Plaintiff had exposed himself to Dann and another correctional officer a month earlier. (*Id.*, ¶ 5.)   Shellhammer further grumbled that the only reason Plaintiff had to be escorted to the medical department in the first place, instead of the phlebotomist going to his cell, was on account of the alleged indecent exposure.   (*Id.*)

Shellhammer called for backup after he already had Plaintiff restrained and on the ground. (*Id.*, ¶ 6.)   Defendants Heim and Nayda then joined the fray, jumping on top of Plaintiff, repeatedly punching him in the head and face, and berating him for having exposed himself.   (*Id.*, ¶¶ 6-7.)   The officers used a racial slur when discussing Plaintiff's alleged misconduct.   (*Id.*, ¶ 7.)

---

1 Ross has not appeared, answered, or otherwise pled to date.   Ross did not join the motion to dismiss.

After the attack was over, Shellhammer and Nayda noticed blood on the floor.  (*Id.*, ¶ 8.) They laughed at the realization that they were the cause of Plaintiff's bloodshed.  (*Id.*)  Plaintiff sustained a gash over his eye from his head striking the wall.  (*Id.*, ¶ 9.)

When Defendant Kietzman, a lieutenant, arrived on the scene, he directed Shellhammer and Nayda to apply the most restrictive form of ambulatory restraints available.  (*Id.*, ¶ 10.)  He did so without even inquiring what had happened.  (*Id.*)  Defendants applied the handcuffs overly tightly, cutting off the blood supply to Plaintiff's hands and causing him to suffer severe pain. (*Id.*, ¶ 11.)  The officers ignored Plaintiff's requests to loosen the restraints.  (*Id.*, ¶¶ 12-13.)

Once Plaintiff was fully retrained, he was taken back to the health care unit for a medical assessment.  (*Id.*, ¶ 14.)  Defendant Bice performed the assessment.  (*Id.*, ¶ 15.)  She bandaged the gash over Plaintiff's eye, but she and the officer refused to check the tightness of the restraints despite Plaintiff's complaints.  (*Id.*, ¶ 16.)  Toward the end of the examination, Kietzman asked Bice to check the restraints.  (*Id.*, ¶ 18.)  She merely patted Plaintiff's hands and then announced that the restraints were "fine."  (*Id.*, ¶ 18.)  Next, Plaintiff was led to a "restraint cell." (*Id.*, ¶ 19.) Plaintiff remained in the exceedingly restrictive ambulatory restraints for about five hours.  (*Id.*)

During Plaintiff's stint in the restraint cell, Shellhammer, Kietzman, Heim, and Williams (another lieutenant), performed a two-hour check.  (*Id.*, ¶ 20.)  Plaintiff complained to Williams that his handcuffs were too tight.  (*Id.*, ¶ 21.)  Heim tightened the handcuffs instead of loosening them, causing Plaintiff to cry out in pain.  (*Id.*)  Williams pushed Plaintiff onto the bed and then directed offensive epithets at him.  (*Id.*)  Moreover, Williams made several racist observations about African Americans in general.  (*Id.*)  Williams concluded the troubling colloquy, with an apparently anti-Muslim remark, after which he spat in Plaintiff's face.  (*Id.*)  He snatched the

bandage from Plaintiff's forehead and then shoved him backwards, causing Plaintiff's head to knock against a wall again. (*Id.*)

When Defendants conducted the restraint check, it would have been plain to them that Plaintiff's hands were swollen "like balloons," that his wrist and face were oozing blood, that any slight movement caused him to "holler" in pain, and that he had urinated on himself on account of the soreness. (*Id.*, ¶ 22.) Notwithstanding Plaintiff's obvious distress and discomfort, as well as his vociferous complaints, Defendants refused to offer any relief. (*Id.*, ¶ 23.) His hollering and "bawling" were met with laughter. (*Id.*)

During Plaintiff's detention in the restraint room, Defendants Bice and Garcia (a prison nurse), had occasion to walk past his cell. (*Id.*, ¶ 24.) They ignored Plaintiff's pleas to loosen his restraints; they likewise disregarded his visible injuries that required medical attention. (*Id.*) Plaintiff's injuries became progressively more alarming the longer he remained in the ambulatory restraints. (*Id.*)

Upon his release from the restraints, Plaintiff submitted multiple sick-call requests seeking treatment for what he believed was nerve damage. (*Id.*, ¶ 30.) His requests went unanswered, and the health care unit administrator told Plaintiff that the medical unit had never received the requests. (*Id.*, ¶ 31.) Plaintiff managed to speak to Defendant Bice, but she said she did not want to get involved as she did not want to take a side against her colleagues. (*Id.*, ¶ 32.) Defendant Pence assured Plaintiff that he was going to have an appointment within the next couple of weeks, but that never happened. (*Id.*, ¶ 33.)

Plaintiff filed a grievance and an appeal regarding the denial of medical care. (*Id.*, ¶ 34.) At the institutional, regional, and central levels of review, Plaintiff was promised he would be seen

"soon," but never did have an appointment. (*Id.*, ¶¶ 34-35, 67-68.) Plaintiff continued to submit grievances concerning his injured wrist, to no avail. (*Id.*, ¶ 37.)

Finally, on an unspecified date some four months after Plaintiff injured his wrist, he had an appointment in the medical unit. (*Id.*, ¶ 37.) Plaintiff consulted with Defendant Ross (a nurse practitioner) and an unidentified physician's assistant. (*Id.*, ¶ 38.) The PA diagnosed the problem as carpal tunnel syndrome. (*Id.*) The PA told Plaintiff that he would have to undergo surgery to repair the wrist but that the Bureau of Prisons would not likely pay for the surgery. (*Id.*) He ventured a guess that the wrist would eventually, with time, heal on its own. (*Id.*)

Defendant Shellhammer prepared a false incident report concerning the skirmish. (*Id.*, ¶ 40.) Shellhammer deceitfully painted Plaintiff as the aggressor to justify the use of force against him. (*Id.*) Defendants Williams and Kietzman wrote up false 2-hour restraint check forms. (*Id.*, ¶ 41.) The paperwork painted Plaintiff as continuing to be unruly so as to explain the prolonged use of maximum restraints. (*Id.*) Shellhammer, Heim, Nayda and Hernandez similarly falsified their 15-minute restraint reports. (*Id.*, ¶ 42.) Defendant Bice falsely stated in a medical assessment form that Plaintiff's restraints had been properly applied. (*Id.*, ¶ 43.) Defendant Ross prepared a clinical encounter report, falsely stating that she had met with Plaintiff in the four months preceding her appointment with him. (*Id.*, ¶ 39.)

Plaintiff asserts that he has permanent nerve damages in his left wrist and hand. (*Id.*, 47.)

## III.   **Analysis**

### A.   **Ability to Sue Under Bivens**

The Court must first address whether Plaintiff has a tenable claim against Defendants under *Bivens*. In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S.

388 (1971), the Supreme Court created an implied cause of action under the Fourth Amendment for constitutional violations committed by federal officials. 403 U.S. at 397. Generally, a plaintiff's only form of relief for violations of constitutional rights against federal employees acting under the color of federal law is a *Bivens* claim. *Gospodinov v. Hudson*, No. 18 CV 50314, 2023 WL 4134695, at *3 (N.D. Ill. June 22, 2023) (citing *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003) ("[A]n action brought pursuant to § 1983 cannot lie against federal officers acting under color of federal law ...")).

*Bivens* was a suit against federal agents on the basis of an allegedly unreasonable search and seizure in violation of the Fourth Amendment. The Supreme Court has since recognized an implied cause of action under *Bivens* in only two other types of cases: (1) cases involving Fifth Amendment gender discrimination, *see Davis v. Passman*, 442 U.S. 228, 248-49 (1979); and (2) cases arising under the Eighth Amendment regarding claims of deliberate indifference to serious medical needs, *Carlson v. Green*, 446 U.S. 14, 19 (1980). The Supreme Court has since clarified that "[t]hese three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself" and counseled against expansion of a *Bivens* remedy in a new context. *Ziglar v. Abbasi*, 520 U.S. 120, 131 (2017). The Court also observed that, for the past thirty years, "it has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'" *Id.* at 1857 (quoting *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)); ); *see also Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) (describing expansion of *Bivens* remedy post-*Egbert* as "impermissible in virtually all circumstances.").

### 1.     Eighth Amendment Excessive Force

Plaintiff may not bring his excessive force claim pursuant to *Bivens*.   In *Egbert v. Boule*, the U.S. Supreme Court declined to extend a *Bivens* remedy to a Fourth Amendment claim of excessive force, --- U.S. ---, 142 S. Ct. at 1805-1807; the Court went on to reject outright a *Bivens* remedy for First Amendment retaliation claims, *id.* at 1807 ("we hold that there is no *Bivens* action for First Amendment retaliation").

The lower courts that have analyzed the issue post-*Egbert* have found that an Eighth Amendment claim for excessive use of force arises in a new context.   *See*, *e.g.*, *Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (unpublished) (excessive force against federal correctional officers arose in a new context distinct from the three recognized categories of *Bivens* claims, involved a new category of defendants, and were "presumptively non-cognizable"); *Silva*, 45 F.4th at 1137 ("The distinction between an excessive force claim like the one Plaintiff brings and a deliberate indifference to medical needs claim—which the Supreme Court recognized as a valid *Bivens* action in *Carlson*—is sufficient to conclude that Plaintiff's claim would require an expansion of *Bivens* to move forward even though it originates under the Eighth Amendment"); *see also Ajaj v. Fozzard*, No. 14 CV 1245, 2023 WL 2989654, at *4–5 (S.D. Ill. Apr. 18, 2023) (excessive force claim arose in new context because it was governed by different legal standard and officials operated under different legal mandates than Eighth Amendment claim approved in *Carlson*); *but see Snowden v. Henning*, 72 F.4th 237, 245-46 (7th Cir. 2023) (plaintiff's Fourth Amendment excessive force claim against a DEA agent was not meaningfully different from *Bivens*, as the officers—though from different agencies—were the same "line-level" ranking officers and operated under the same legal mandate as the *Bivens* defendants).

Based on *Egbert*, this Court has found that a claim based on alleged force used when entering a home presented a new *Bivens* context (Fourth Amendment), and that special factors counseled against recognizing that claim. *See McNeil v. Duda*, No. 22 CV 50096, 2023 WL 2587884, at *3-4 (N.D. Ill. Mar. 21, 2023) (Johnston, J.). It reached the same conclusion in an Eighth Amendment excessive force claim asserted by a prisoner based on alleged events at USP Thomson. *See Kincaid v. Fulton*, Case No. 22 CV 50252, Dkt. 19 (N.D. Ill. Feb. 1, 2023) (Johnston, J.) (unpublished order); *see also Ajaj*, 2023 WL 2989654, at *6 (S.D. Ill. Apr. 18, 2023) (surveying cases and concluding that the "overwhelming weight" of authority indicates that *Bivens* does not reach prisoner excessive force claims).

Furthermore, the courts have found that special factors counsel hesitation in recognizing a *Bivens* claim for Eighth Amendment excessive force, including the availability of alternative remedies through the BOP's Administrative Remedy Program and under the Federal Tort Claims Act, as well as the fact that Congress has not created a cause of action for damages against federal correctional officers. *See Greene*, 2022 WL 13638916, at *4 (observing that "implying a cause of action in this context would risk interfering with prison administration"); *Silva*, 45 F.4th at 1141 (BOP Administrative Remedy Program qualified as adequate alternative remedy for excessive force claim, foreclosing *Bivens* claim); *Montalban v. Samuels*, No. 21-11431, 2022 WL 4362800, at *4 (11th Cir. Sept. 21, 2022) (unpublished) (even if Administrative Remedy Program was unavailable to prisoner, the Court would not recognize a *Bivens* remedy because Congress has chosen "not to create a standalone damages remedy against federal prison staff," and separation-of-powers concerns counseled hesitation).

Relatedly, "*Bivens* is not the appropriate vehicle for challenging" the application of a BOP

10

policy to a specific prisoner. *See Clark v. True*, No. 20 CV 0049, 2021 WL 3860461, at *3-5 (S.D. Ill. Aug. 30, 2021) (citing *Ziglar*, 137 S.Ct. at 1849). Thus, any *Bivens* claim based on BOP regulations governing security restraints is not actionable.

Plaintiff may not bring an Eighth Amedment *Bivens* claim against Defendants over their alleged use of excessive force.

### 2. Viability of Medical Claim Under *Bivens*

Plaintiff may continue to pursue his Eighth Amendment medical claim. Here, as in *Carlson*, a federal inmate is suing federal prison health care providers in connection with claims of inadequate and/or denied care. Defendants attempt to distinguish this case from *Carlson*, noting that the plaintiff was housed in an inferior health care facility, and received inadequate care after an asthma attack, leading to his death. Defendants point out that Plaintiff's medical needs were not as grave in this case, and that he fortunately did not die. But *Carlson* and the instant lawsuit are in the same continuum.

In *Gospodinov v. Hudson*, No. 18 CV 50314, 2023 WL 4134695, at *4 (N.D. Ill. June 22, 2023) the court found that a plaintiff's suit against prison doctor over care and treatment of gastroenterological complaints implicated no new federal context; *but see Washington v. Fed. Bureau of Prisons*, No. 16 CV 3913, 2022 WL 3701577, at *5-8 (D.S.C. Aug. 26, 2022) (finding medical claim involving care for chronic, non-fatal condition arose in new context from *Carlson*, and thus was not viable under *Bivens*, even though the claims "parallel those in *Carlson* to the degree they are brought under the Eighth Amendment and relate to medical care in the prison setting generally."); *see also Zhang v. Schuster*, No. 18 CV 3283, 2022 WL 615015, at *12 (N.D. Ill. Mar. 2, 2022) ("[S]ince *Abbasi*, many courts have found that even the potential availability of

11

relief under the FTCA weighs against permitting a *Bivens* remedy'") (collecting cases).

This case does not implicate a new *Bivens* context. And because the Court finds that Plaintiff has a potential claim under the *Bivens* framework, the Court need not entertain Defendants' arguments about the undesirability of fashioning a new remedy or the need to consider alternatives to *Bivens*.

It is nevertheless debatable whether carpal tunnel constitutes a serious medical need—or even whether one could develop carpal tunnel from a single day's use of wrist restraints.

Many courts have considered carpal tunnel not to be objectively serious for purposes of Eighth Amendment analysis. *See, e.g., McGugan v. Clarke*, 20 CV 0303, 2021 WL 4429191, at *4 (W.D. Va. Sept. 27, 2021) ("[Plaintiff]'s allegations regarding a carpal tunnel injury that caused him to suffer great pain in his wrist, and that his hand does not work properly, likewise do not allege a serious medical condition"); *Tensley-Bey v. Virginia*, No. 00 CV 1449, 2002 WL 32615105, at *4 (E.D. Va. Apr. 9, 2002) ("[S]ymptoms of carpal tunnel syndrome and bursitis do not appear to rise to the level of a serious condition"); *Green v. Senkowski*, 100 F. App'x 45, 46–47 (2d Cir. 2004) (holding that prison medical records did not support finding of serious medical condition despite prisoner's characterization of his wrist condition as "paralytic"); *Webb v. Prison Health Services*, 94 CV 3064, 1997 WL 298403, at *2 (D. Kansas May 7, 1997) (Carpal tunnel syndrome and a rotator cuff injury were not sufficiently serious medical conditions to trigger the Eighth Amendment).

Still, other courts have held that carpal tunnel may rise to the level of a serious medical condition. *See, e.g., Robinson v. Kirsch*, No. CV 19 CV 0953, 2022 WL 1592579, at *4 (E.D. Pa. May 19, 2022) ("carpal tunnel syndrome is a serious medical need"); *Ford v. Essex Cnty. Jail*, No.

CV 17 4864, 2019 WL 3231750, at *11 (D.N.J. July 18, 2019) ("Ford's purported injuries to his left wrist, on the other hand, represent an adequately pled 'serious' medical need under *Estelle* because Ford has expressly alleged that [a physician] diagnosed him as suffering from carpal tunnel syndrome in his left wrist"); *Scott v. Clarke*, 64 F. Supp.3d 813, 818, 824 (W.D. Va. 2014) (holding that an inmate's carpal tunnel syndrome, together with her degenerative disc disease, chronic pain related to disc and joint problems, incontinence, and chronic kidney disease showed that she had serious medical needs). At this early stage of the proceedings, the Court will assume Plaintiff's condition to have been serious.

And besides, whether Plaintiff's condition is or was serious, he alleges that he was denied pain management for at least four months. "Even without a corresponding exacerbation of an underlying condition, 'deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim.'" *Heard v. Tilden*, 774 F. App'x 985, 988 (7th Cir. 2019) (quoting *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1039–40 (7th Cir. 2012)).

## B. Race-Based Conspiracy

### 1. Liability Under 28 U.S.C. § 1985

As an additional (or alternative) basis for liability, Plaintiff alleges that Defendants conspired to use excessive force against him, to inflict overly restrictive restraints on him, and to deny him needed medical care all on account of his race. The civil conspiracy statute provides an avenue for legal redress if "two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). Although the question has not been squarely decided in this circuit, the Court assumes

13

without finding that federal officials may be sued under Section 1985 for racially-motivated conspiracies. *See Liggins v. O'Sullivan*, No. 19 CV 50303, 2022 WL 787947, at *6 (N.D. Ill. Mar. 15, 2022) (discussing § 1985's applicability to federal defendants).

However, this Court recently held that the intracorporate conspiracy doctrine barred suit against prison officials working for the same entity. *Id.*; *see also Greene v. Teslik*, No. 21-2154, 2023 WL 2320767, at *4 (7th Cir. Mar. 2, 2023) (non-precedential opinion) (the intracorporate conspiracy "applies to large bureaucratic agencies," like a department of corrections); *Williams v. Cook Cnty.*, No. 05 CV 6351, 2006 WL 1806198, at *2 (N.D. Ill. June 29, 2006) ("The intra-corporate conspiracy doctrine precludes conspiracy claims against members of the same entity acting within the scope of their authority.") (citations omitted); *Smith v. Walton*, No. 14 CV 0514, 2014 WL 6819717, at *3 (S.D. Ill. Dec. 3, 2014) (dismissing, on threshold review, plaintiff's 1985 claims against federal prison officials as barred by the intracorporate conspiracy doctrine).

The intracorporate conspiracy doctrine holds that a conspiracy cannot exist solely between members of a single entity, including a governmental entity. *Wright v. Illinois Dept. of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994). Defendants could not conspire with themselves, as employees of the same entity. *Jones v. Williams*, No. 13 CV 4049, 2016 WL 4545311, at *3 (C.D. Ill. Aug. 31, 2016). The Court sees no reason to diverge from this path.

The Seventh Circuit has defined two exceptions to the intracorporate conspiracy doctrine: (1) "where corporate employees are shown to have been motivated solely by personal bias;" and (2) where "the conspiracy was part of some broader discriminatory pattern ... or ... permeated the ranks of the organization's employees." *Giese v. Boyce*, No. 19 CV 1245, 2020 WL 12812484, at *4 (C.D. Ill. Nov. 2, 2020) (quoting *Hartman v. Bd. of Tr. of Cmty. Coll. Dist. 508*, 4 F.3d 465,

14

470-71 (7th Cir. 1993). In *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, the Seventh Circuit characterized the "personal bias exception" as the "egregious circumstances" exception. 184 F.3d 623, 633 (7th Cir. 1999).

Plaintiff argues that the personal bias exception to the intracorporate conspiracy doctrine applies. The personal bias exception applies in egregious circumstances when the organization's employees were motivated solely by personal bias. *Hartman v Bd. of Trs. of Cmty Coll. Dist. No. 508*, 4 F.3d 465, 470 (7th Cir. 1993); *Payton*, 184 F.3d at 633. When individuals are motivated solely by personal bias, the corporation's interests play no part in the employees' collective action and, therefore, the employees do not act within the scope of their employment. *Hartman*, 4 F.3d at 470. "A frequent example of personal bias noted in court cases is where the 'Ku Klux Klan incorporates to avoid conspiracy liability for 'carrying out acts of violence.'" *Tanner v. Bd. of Trustees of Univ. of Illinois*, No. 17 CV 3039, 2018 WL 1161140, at *12 (C.D. Ill. Mar. 5, 2018) (citing *Stone v. Bd. of Trs. of N. Ill. Univ.*, 38 F. Supp. 3d 935, 950 (N.D. Ill. 2014)).

In the instant case, Plaintiff cannot reasonably dispute that Defendants were acting within the scope of their employment. Defendants may well have harbored racial animus against Plaintiff, yet at the same time, one of their goals—perhaps their principal goal—was to maintain safety and security. Plaintiff specifically avers that he has accrued hundreds of disciplinary reports during his incarceration, enough that he will be in segregation for the duration of his confinement Although not necessarily conceding his guilt, Plaintiff also acknowledges that he is at the very least accused of serial exhibitionism, showing his genitals to prison employees. Defendants' actions, at least in part, were directed at protecting female staffers from Plaintiff's sexual misconduct. *Jenkins v. County of DuPage*, No. 93 CV 5587, 1994 WL 327485, at *6 (N.D.

15

Ill. July 6, 1994) (holding that plaintiff had not sufficiently alleged a conspiracy for purposes of §

1985 from a single defendant's racial comment that could not be attributed to other defendants).

As Plaintiff concedes, *see* dkt. 60, Response to Motion to Dismiss at p. 22[2], he has not stated a

cognizable conspiracy claim under 28 U.S.C. § 1985(3).   Plaintiff has insufficiently alleged that

race is a motivation for Defendants' actions.

The Court observes, nevertheless, that Plaintiff's conspiracy would likely fail to withstand

a motion to dismiss for failure to state a claim even in the absence of the intercorporate conspiracy

doctrine.   A sister court explained to Plaintiff in a recent decision that a conspiracy must have a

factual foundation.

> To state a § 1985(3) claim, Landis must allege: "(1) a conspiracy; (2) for the
> purpose of depriving, either directly or indirectly, any person or class of
> persons of the equal protection of the laws ...; and (3) an act in furtherance of
> the conspiracy; (4) whereby a person is injured in his person or property or
> deprived of any right or privilege of a citizen of the United States." *Farber v.*
> *City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting *United Bhd. of*
> *Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)). The allegations
> for a conspiracy must be "based in fact" and not "merely upon [the plaintiff's]
> own suspicion and speculation." *Young v. Kann*, 926 F.2d 1396, 1405 n.16
> (3d Cir. 1991); *see also D.R. by L.R. v. Middle Bucks Area Vocational Tech.*
> *Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992) (conclusory allegations are not
> sufficient to state a § 1985(3) claim).

*Landis v. Ebbert*, No. 22-1265, 2022 WL 17496012, at *1 (3d Cir. Dec. 8, 2022).

In *Landis*, the court of appeals affirmed dismissal of the plaintiff's claim stemming from a

dispute over a cell assignment where he asserted that the defendants "agreed via written and oral

communication" to revoke his privileges.   In the case at bar, Plaintiff similarly alleges, essentially,

---

2  Plaintiff goes on to say that his second amended complaint cures pleading defects, but the Court did not accept
the second amended complaint; therefore, references to that document in connection with the motion to dismiss the
operative first amended complaint are inappropriate.   Likewise, the Court has disregarded Plaintiff's twenty-page
"declaration" in opposition to the motion to dismiss, which he characterizes aa merely "illustrative."

"I am Black; Defendants made racially offensive slurs. Therefore, any action they took that I didn't like amounted to a conspiracy against." Plaintiff's allegations fall short of stating a viable conspiracy claim. Regardless, the Court is not at all satisfied that the amended complaint suffices to state a claim against Defendants.

### 2. Liability Under 42 U.S.C. § 1986

Because Plaintiff has no actionable claim under 42 U.S.C. § 1985, he consequently has no claim under 42 U.S.C. § 1986. Under Section 1986 ("Action for Neglect to Prevent"),

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented….

42 U.S.C. § 1986.

"When a plaintiff fails to state a Section 1985 claim, his Section 1986 claim also fails." *Smith* at *3 (citing *Smith v. Gomez,* 550 F.3d 613, 617-618 (7th Cir. 2008); *Hicks v. Resolution Trust Corp.,* 970 F.2d 378, 382 (7th Cir. 1992)). The intracorporate conspiracy doctrine applies to claims under § 1986, "which are derivative of claims under § 1985." *Greene*, 2023 WL 2320767, at *4 (citing *Ennin v. CNH Indus. Am., LLC,* 878 F.3d 590, 597 (7th Cir. 2017)).

The Court has not considered the issue of exhaustion in dismissing Plaintiff's conspiracy claims. Defendants point out that Plaintiff failed to exhaust administrative remedies relating to alleged racial hostility before filing suit, while Plaintiff argues that the administrative exhaustion process was effectively unavailable to him. Normally, the Court would hold a *Pavey* hearing to resolve the exhaustion dispute, and would do so before addressing the merits. *See Pavey v. Conley*, 663 F.3d 899, 905-06 (7th Cir. 2011); *Wagoner v. Lemmon*, 778 F.3d 586, 588 (7th Cir.

2015). But the Court is satisfied that the conspiracy count can be disposed of without the necessity of deciding exhaustion. Plaintiff has no right to relief under either Section 1985 or 1986.

### C. Justiciability of Claim Against the Bureau of Prisons Under the Administrative Procedure Act

Plaintiff has no remedy under the Administrative Procedures Act. Plaintiff may not sue the federal Bureau of Prisons for damages. "To maintain an action against the United States in federal court, a plaintiff must identify ... a federal law that waives the sovereign immunity of the United States to the cause of action." *Shahi v. United States Dep't of State*, 572 F. Supp. 3d 470, 480 (N.D. Ill. 2021) (quoting *Clark v. United States*, 326 F.3d 911, 912 (7th Cir. 2003)). The APA "explicitly precludes compensatory relief against the government." *Yung-Kai Lu*, 292 F. Supp. 3d at 283 (citing *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261-62 (1999) and 5 U.S.C. § 702)). Moreover, nominal damages are unavailable. *See Shahi*, 572 F. Supp. 3d at 481 ("Nominal damages are money damages, and if other kinds of money damages are unavailable due to sovereign immunity, then so are nominal damages") (collecting cases). *Shahi v. United States Dep't of State*, 572 F. Supp. 3d 470, 481 (N.D. Ill. 2021), *aff'd,* 33 F.4th 927 (7th Cir. 2022).

Plaintiff may not pursue declaratory or injunctive relief in light of his transfer from Thomson to another facility. His claim about the unreasonable use of restraints at Thomson presents no live case or controversy that might result in meaningful relief to him. *See, e.g., Waugh v. Schreiber*, No. 21 CV 0813, 2022 WL 2356959, at **4-5 (S.D. Ill. June 30, 2022) (dismissing prisoner's APA claim as moot in view of his transfer to another facility).

To come within the "capable of repetition, yet evading review" exception to mootness, the challenged action "must be too short in duration to be fully litigated prior to its cessation and there

must be an expectation that the complaining party will again be subjected to the protested action."
*Luther v. Molina*, 627 F.2d 71, 73–74 (7th Cir. 1980) (citing *Board of Trade v. Commodity Futures Trading Commission*, 605 F.2d 1016, 1020 (7th Cir. 1979)). Plaintiff appears to be challenging not a federal (prison) regulation, but rather Thomson officials' manner of executing the security restraint regulations in question. Judicial review under the APA of prisoner claims challenging security classifications, housing designations, and similar decisions made by the BOP are likely foreclosed. *Landis v. Moyer*, 610 F. Supp. 3d 649, 656 (M.D. Pa. 2022) (collecting cases).

Plaintiff says he has been placed in maximum restraints on four occasions since 2016, or about every two years or so. The problem is not so pressing or regularly recurring as to warrant relief on the basis of a single incident in a since-closed penitentiary. Plaintiff's APA challenge is dismissed.

**Conclusion**

For all of the foregoing reasons, Defendants' motions to dismiss [45], [53] are granted as to Plaintiff's Eighth Amendment excessive force claim, his Section 1985 and 1986 conspiracy claims, and his APA claim. Officer Shellhammer, Officer Heim, Officer Nayda, Officer Hernandez, Lieutenant Kietzman, Lieutenant Williams, and the Bureau of Prisons are dismissed as Defendants. Plaintiff may move forward with his Eighth Amendment medical claim. The Court directs Defendants Bice, Garcia, Pence, and Ross to answer or otherwise respond to the first amended complaint by November 3, 2023.

Date: September 26, 2023   By: _____

Iain D. Johnston
United States District Judge

19