[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**RECEIVED**

**APR 1 0 2023**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Carlton Theodore Landis

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

Correctional Officer Shellhammer

Correctional Officer Heim

Correctional Officer Nayda

Lieutenant Williams

Nurse Bice

Lieutenant Kietzman

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

Case No: 20-CV-50447

(To be supplied by the Clerk of this Court)

Amended Complaint

**CHECK ONE ONLY:**

_____ COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
U.S. Code (state, county, or municipal defendants)

_✓_ COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code (federal defendants)

_✓_ OTHER (cite statute, if known) 42 USC §§ 1985(3) and 1986

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

1 of 27

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I. **Plaintiff(s):**

A. Name: _Carlton Theodore Lundis_

B. List all aliases: _Carlton Theodore Landers_

C. Prisoner identification number: _24449-056_

D. Place of present confinement: _USP- McCreary_

E. Address: _P.O. Box 3000, Pine Knot, Kentucky 42635_

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A. Defendant: _Derek Shellhammer_

Title: _Correctional Officer_

Place of Employment: _AUSP-Thomson_

B. Defendant: _Derrick Heim_

Title: _Correctional Officer_

Place of Employment: _AUSP-Thomson_

C. Defendant: _Joseph Rusydu_

Title: _Correctional Officer_

Place of Employment: _AUSP-Thomson_

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2 of 27                    Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III.    **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.    Name of case and docket number: Lundis v. Martin, et al.; 19-CV-177-DPJ -FKB

B.    Approximate date of filing lawsuit: March 16, 2019

C.    List all plaintiffs (if you had co-plaintiffs), including any aliases: Carlton Theodore Lundis

D.    List all defendants: Martin, Singleton, Curry, Evans, Taylor, Grimaldi, Lott, Rogers

E.    Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): Southern District of Mississippi

F.    Name of judge to whom case was assigned: Daniel P. Jordan

G.    Basic claim made: Retaliatory placement in segregation and denial of medical care

H.    Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Case was dismissed

I.    Approximate date of disposition: October 4, 2020

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## IV. Statement of Claim:

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

1. On or about October 10, 2019, Dale Kietzman ("Kietzman") and Robert Williams ("Williams") convened a meeting in the rotunda of E-Unit with Kristen Bice ("Bice"), Vanessa Garcia ("Garcia"), Kaddie Hernandez ("Hernandez"), Teresa Ross ("Ross"), Mary Pence ("Pence"), Joseph Nayda ("Nayda"), Derek Shellhammer, Derrick Heim ("Heim"), Heather Dunn ("Dunn"), and an unknown prison official dressed in an all-blue uniform ("Big Blue").

2. Kietzman and Williams convened the October 10, 2019, meeting because three white women (Bice, Hernandez, and Dunn) had complained to Kietzman and Williams that a black man (Plaintiff) had exposed himself to them (Bice, Hernandez, and Dunn) at some time before October 10, 2019.

3. During the October 10, 2019, meeting, Kietzman and Williams told Bice, Garcia, Hernandez, Ross, Pence, Nayda, Shellhammer, Heim, Dunn, and Big Blue that all of them would participate in placing and maintaining Plaintiff in restraints the morning of October 10,

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

2019, because Plaintiff had exposed himself to Bice, Hernandez, and Dann; and that they (Hietman, Williams, Bice, Garcia, Hernandez, Ross, Pence, Nayda, Shellhammer, Heim, Dann, and Big Blue) had to teach black people a lesson about exposing themselves to white women.

4. During the October 10, 2019, meeting, Hietzman and Williams told Shellhammer and Heim to go to Plaintiff's cell, tell Plaintiff that he had to go to get his blood drawn, and bring Plaintiff to the nurse station where Bice and Dann would be waiting.

5. During the October 10, 2019, meeting, Hietzman and Williams told Shellhammer to escort Plaintiff from the nurse station, after Plaintiff got his blood drawn, slam Plaintiff on the ground in the E-Unit rotunda, and call for backup, at which point Hietzman, Williams, Heim, Nayda, and Big Blue would come to his assistance. Hietzman and Williams also told Shellhammer to falsify an incident report, claiming that Plaintiff assaulted him (Shellhammer), in order to make it appear that he (Shellhammer) rightfully used force on Plaintiff.

6. During the October 10, 2019, meeting, Hietzman and Williams told Shellhammer, Nayda, Heim, Hernandez, and Big Blue, to put Plaintiff in the most restrictive form of ambulatory restraints in order to cause Plaintiff

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## V.    Relief:

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

Nominal damages to whatever extent the court may deem appropriate; Compensatory damages in the amount of $50,000; Punitive damages in the amount of $100,000; and Plaintiff's costs of suit.

VI    The plaintiff demands that the case be tried by a jury.    ☑ YES    ☐ NO

### CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this __3rd__ day of __April__, 20_23_

_____
(Signature of plaintiff or plaintiffs)

Carlton T. Landis
(Print name)

24449-056
(I.D. Number)
USP-Mccreary

P.O. Box 3000

Pine Knot, Kentucky 42635
(Address)

Revised 9/2007
[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

pain, to severly tighten Plaintiff's restraints in order to cause Plaintiff pain, and to falsify staff memos and 15-minute restraint-check forms, by writing that Plaintiff was unruly before, during, and after being placed in restraints, in order to justify placing and maintaining Plaintiff in restraints.

7. During the October 10, 2019, meeting, Kietzman and Williams told Bier, Garcia, Ross, Dunn, and Pence to (1) falsify medical forms by writing that (a) Plaintiff's restraints were applied properly even though they would not be and (b) Plaintiff suffered no restraint-related injuries when, in fact, Plaintiff would; and (2) ignore any request Plaintiff submitted in regard to receiving medical treatment for his restraint-related injuries in order to further conceal any abuse.

8. On October 10, 2019, Shellhammer and Heim came to Plaintiff's cell and demanded that Plaintiff attend a medical appointment with phlebotomist Dunn.

9. Plaintiff agreed to attend the medical appointment and Shellhammer escorted Plaintiff, who was restrained with handcuffs attached to a waist chain, to the medical department to get Plaintiff's blood drawn.

10. When Plaintiff and Shellhammer arrived to the medical department, Bice and Dann were present.

11. Dann withdrew some of Plaintiff's blood and, afterwards, Shellhammer escorted Plaintiff out of the medical department.

12. En route to Plaintiff's housing unit, Shellhammer rammed Plaintiff's head against the wall and slammed Plaintiff on the ground.

13. Plaintiff asked Shellhammer why he was assaulting Plaintiff and Shellhammer said he was assaulting Plaintiff because Plaintiff had exposed himself to Dann and Hernandez about a month earlier.

14. Shellhammer called for backup while he had Plaintiff restrained on the ground, and Heim, Nayda, and Big Blue came and jumped on top of Plaintiff.

15. While on top of Plaintiff, Shellhammer, Heim, Nayda, and Big Blue repeatedly punched Plaintiff in the head and face while chiding ("This is the stupid nigger that likes exposing himself to female staff.") Plaintiff for exposing himself to Dann and

Hernandez.

16. After Shellhammer, Heim, Nayda, and Big Blue stopped punching Plaintiff, one of them saw Plaintiff's blood on the floor and inquired as to where the blood was coming from, to which Shellhammer replied that the blood came from "smashing" Plaintiff's head against the wall. Heim, Nayda, Big Blue, and Shellhammer laughed at Shellhammer's response.

17. Plaintiff suffered a gash above his left eye as a consequence of Shellhammer "smashing" Plaintiff's head against the wall.

18. Kietzman also responded to Shellhammer's call for backup, and without even inquiring about what had happened, Kietzman ordered Heim, Shellhammer, and Nayda to put Plaintiff in the most restrictive form of ambulatory restraints.

19. While putting Plaintiff in the most restrictive form of ambulatory restraints, Heim applied Plaintiff's hand restraints extremely tight, causing Plaintiff to experience immediate pain to his wrists.

20. Plaintiff immediately asked Kietzman, Shellhammer, Nayda, and Heim to loosen the hand restraints, but they refused to

loosen the hand restraints even though they saw the restraints were too tight.

21. After being placed in the most restrictive form of ambulatory restraints, Plaintiff was escorted to the medical department for a medical assessment.

22. Bice conducted the medical assessment.

23. During the medical assessment Plaintiff complained that his hand restraints were too tight, but Kietzman, Heim, Nayda, Shellhammer, and Bice ignored Plaintiff.

24. During the medical assessment, Bice bandaged the gash above Plaintiff's left eye.

25. Toward the end of the medical assessment, Kietzman told Bice to check the restraints, and Bice responded by lightly and quickly patting Plaintiff's hands with her hands and saying the restraints were fine.

26. After the medical assessment was completed, Plaintiff was escorted to a "restraint cell", where Plaintiff was maintained in

10 of 27

the most restrictive form of ambulatory restraints for approximately five hours.

27. During the five hours that Plaintiff was confined in the restraint cell, Williams, Kietzman, Shellhammer, and Heim conducted 2-hour restraint checks on Plaintiff.

28. During a 2-hour restraint-check, Heim told Plaintiff to stand up while Plaintiff complained to Williams that the hand restraints were too tight. After Plaintiff stood up, Heim tightened Plaintiff's handcuffs and waistchain causing Plaintiff to holler in pain. Then, Williams and Heim pushed Plaintiff on the bed and proceeded to call Plaintiff a "stupid nigger", "spook", and "coon". Shellhammer stated that they always had to put black people in restraints for exposing themselves to female staff, and that he did not understand why black people were muslim. Williams stated that he knew Plaintiff believed that he was a "little devil", and that he was going to show Plaintiff what a devil he really was. Williams then approached Plaintiff and spit in Plaintiff's face and said "fuck Farrakhan". Heim snatched the bandage off of Plaintiff's left eye and pushed Plaintiff backwards causing Plaintiff's head to hit the wall.

29. During the 2-hour restraint-check, Kietzman, Williams, Shellhammer, and Heim saw that Plaintiff's hands were swollen like balloons, that Plaintiff's wrists and face were oozing blood, that the slightest movement by Plaintiff caused Plaintiff to holler in pain, and that Plaintiff had urinated on himself due to the tightness of the restraints which caused excruciating pain when Plaintiff tried to stand up. Despite seeing, and Plaintiff complaining to them about, Plaintiff's obvious pain and discomfort, Kietzman, Williams, Shellhammer, and Heim refused to assist Plaintiff. Kietzman told Plaintiff that the more Plaintiff complained about his injuries and restraints, the longer he would keep Plaintiff in restraints.

30. While Plaintiff was confined in the restraint cell, the pain caused by the overly tightened restraints became unbearable, causing Plaintiff to repeatedly holler and bawl in pain for help. During Plaintiff's agony, Plaintiff saw and heard Heim and Hernandez respond to Plaintiff's pleas for help by laughing at Plaintiff and yelling to Plaintiff that Plaintiff was "stupid" and that Plaintiff was getting what he deserved.

31. While Plaintiff was confined in the restraint cell, Bice and Garcia walked by Plaintiff without responding to Plaintiff's pleas for them to loosen Plaintiff's restraints and to tend to Plaintiff's

aggravated facial and carpal injuries, which were becoming progressively more severe in pain and in physical magnitude because the overly tightened restraints kept digging into Plaintiff's skin more and more with time.

32. While Plaintiff was confined in the restraint cell, Plaintiff overheard inmates say that someone from the Bureau of Prisons (BOP) regional office was in the unit. In response, Plaintiff inched his way to the cell door, while experiencing excruciating pain due to the movement of the overly tightened restraints on Plaintiff's limbs, and pled for help from a woman standing in the front of the unit. Upon hearing Plaintiff's plea for help, the woman quickly left the unit.

33. Several minutes after the woman left the unit, hietzman came inside the restraint cell and loosened Plaintiff's leg restraints, even though Plaintiff informed him, and he could obviously see, that Plaintiff's waist and hand restraints were too tight, not Plaintiff's leg restraints, but he refused, saying that he would let Plaintiff out of restraints when he returned.

34. hietzman returned thirty minutes later and released Plaintiff from restraints.

35. During the five hours that Plaintiff was in overly tightened restraints, Bill and Garcia did not perform, as required by BOP policy, a medical restraint-check on Plaintiff in order to ascertain if Plaintiff had acquired new injuries or if his old injuries had become worse.

36. Due to Plaintiff being held in overly tightened restraints for five hours, Plaintiff suffered severe numbness (nerve damage), swelling, bruising, gashing, discoloration, and pain to his hands, wrists, and ankles.

37. While Plaintiff was being held in overly tightened restraints, Hietzman and Williams falsified two-hour restraint-check forms by writing that Plaintiff was unruly while in restraints, Plaintiff was not unruly while in restraints, and Hietzman and Williams knew that Plaintiff was not unruly while in restraints when they wrote it. Hietzman and Williams falsified the 2-hour restraint-check forms in order to justify maintaining Plaintiff in restraints, which Hietzman and Williams intended to use to inflict pain, injury, and suffering on Plaintiff as described above.

38. While Plaintiff was being held in overly tightened restraints, Hernandez, Heim, Shellhammer, and Nayda falsified 15-minute

restraint-check forms and staff memos by writing that Plaintiff was unruly while in restraints. Plaintiff was not unruly while in restraints, and Hernandez, Heim, Shellhammer, and Nayda knew that Plaintiff was not unruly while in restraints when they wrote it. Hernandez, Heim, Shellhammer, and Nayda falsified the 15-minute restraint-check forms in order to justify maintaining Plaintiff in restraints, which Hernandez, Heim, Shellhammer, and Nayda intended to use to inflict pain, injury, and suffering on Plaintiff as described above.

39. Bice falsified a medical assessment form on October 10, 2019, by writing that Plaintiff's restraints were properly applied by Heim, Shellhammer, Kietzman, Williams, and Nayda during the initial application of the restraints on October 10, 2019. Plaintiff's restraints were applied overly tightly and Bice knew the restraints were applied too tight when she wrote it. Bice falsified the medical assessment form in order to conceal the fact that the restraints were too tight because Bice knew that the tight restraints would cause Plaintiff pain, injury, and suffering, which was exactly what Bice wanted.

40. The excessive tightness of Plaintiff's hand and waist restraints is a serious medical condition that can cause permanent injury (amputation, nerve damage, etc.) or death.

15 of 27

41. After Plaintiff was released from restraints, Plaintiff was delivered an incident report. The incident report was written by Shellhammer and it claimed that Plaintiff attempted to assault Shellhammer on the morning of October 10, 2019, by aggressively pulling away from him while he was escorting Plaintiff to his housing unit. Shellhammer falsified the incident report, as Plaintiff never attempted to assault Shellhammer and Shellhammer knew that Plaintiff never attempted to assault him when he wrote it on the incident report. Shellhammer falsified the incident report in order to justify placing Plaintiff in restraints, which Shellhammer intended to use to further inflict pain, injury, and suffering on Plaintiff as described above. The incident report was dismissed by the Disciplinary Hearing Officer.

42. After Plaintiff was released from restraints, Plaintiff submitted several sick-call requests to Bile, Garcia, and other medical staff in regard to the injuries Plaintiff received on October 10, 2019.

43. The sick-call requests that Plaintiff submitted to Bile, Garcia, and other medical staff went unanswered.

44. When Plaintiff inquired about the status of his sick-call requests, Pence told Plaintiff that the medical department never

16 of 27

received the sick-call requests. In response to Pence's claim, Plaintiff hand-delivered Pence a sick-call request in regard to Plaintiff's restraint-related injuries. After Plaintiff delivered Pence the sick-call request, Pence repeatedly promised Plaintiff, everytime she did her rounds, that Plaintiff would be seen by medical in regard to his restraint-related injuries. However, Plaintiff was never seen by anyone from the medical department.

45. When Plaintiff spoke to Bice about the sick-call requests, she told Plaintiff that she would not involve herself with providing treatment for restraint-related injuries, as she would be going against her coworkers.

46. Seeing that Pence, Bice, and Garcia had no plan to assist Plaintiff in receiving treatment for his pain and injuries, Plaintiff lodged several grievances concerning the lack of medical treatment.

47. Despite filing several grievances regarding the lack of medical treatment, no one from the medical department saw Plaintiff in regard to his pain and injuries. But Plaintiff continued to file grievances in order to compel someone from the medical department to see Plaintiff in regard to his pain and injuries.

17 of 27

48. During the time Plaintiff was filing grievances with no success in getting seen by the medical department, Ross fabricated a "clinical encounter" form by writing that she had seen Plaintiff in regard to his restraint-related injuries and that she did not note any injuries to Plaintiff's hands and wrists. This clinical encounter never happened and Ross knew that it never happened when she wrote it. Ross fabricated the clinical encounter in order to hide the fact that Plaintiff was severly injured while in restraints.

49. When Plaintiff continued to complain and file grievances to prison officials about the continuing pain and injury to his wrists, Ross and a physician assistant (PA) finally saw Plaintiff in regard to his restraint-related pain and injuries — four months after Plaintiff was first injured.

50. During the belated clinical encounter with Ross and the PA, the PA told Plaintiff that Plaintiff had carpal nerve damage but that there was nothing he could do about it because it would require surgery to fix which he doubted the BOP would pay for. The PA told Plaintiff that time would probably fix it.

51. The Defendants (Shellhammer, Heim, Nayda, Hietzman, Williams,

Bice, Garcia, Pence, Ross, and Hernandez) refused to provide for the treatment of Plaintiff's serious medical condition and caused (1) Plaintiff's condition to worsen (bruising, blistering, discoloration, swelling, and numbness (nerve damage) to Plaintiff's wrists, hands, and waist) and (2) Plaintiff to endure prolonged pain (aching, stinging, burning, stiffness, cramping) to Plaintiff's wrists, hands, and waist.

52. Due to the acts and omissions of Shellhammer, Heim, Nayda, Kietzman, Williams, Bice, Garcia, Pence, Ross, and Hernandez, Plaintiff suffers from permanent nerve damage and acute pain to his left wrist and hand.

53. Plaintiff suffered, and continues to suffer from, extreme mental and emotional distress due to the acts and omissions (as described above) of Shellhammer, Heim, Nayda, Kietzman, Williams, Bice, Garcia, Pence, Ross, and Hernandez.

54. Shellhammer, Heim, Nayda, Kietzman, Williams, Hernandez, Bice, Garcia, Ross, and Pence conspired to unjustly place and maintain Plaintiff in the most restrictive form of ambulatory restraints, which were maliciously and sadistically tightened, in order to inflict corporal punishment on Plaintiff on account of his

19 of 27

race, as these Defendants were hell-bent on exacting revenge because a blackman (Plaintiff) exposed himself to a white woman (Dunn, Hernandez, and Bice).

55. Defendants Shellhammer, Hein, Dayda, Kietzman, Bice, Garcia, Williams, Pence, Ross, and Hernandez conspired with each other to deprive Plaintiff of equal protection of the law — guaranteed by the Fifth Amendment (Equal Protection), 18 USC § 4042 (a)(2) and (3), and 28 CFR 552. 20-27 — by (1) fabricating government documents in order to justify placing and maintaining Plaintiff in restraints, (2) using force on, and applying restraints to, Plaintiff in a malicious and sadistic manner on October 10, 2019, (3) deliberately ignoring the pain, injury, and suffering caused to Plaintiff by their malicious and sadistic acts, and/or (4) utilizing racially-charged verbal tripes towards Plaintiff in order to degrade and humiliate Plaintiff because of his African ancestry.

56. Plaintiff was similarly situated with white inmates at AUSP-Thomson who (a) purportedly or actually exposed themselves to white women or black women and/or (b) were placed and maintained in physical restraints.

57. Plaintiff was treated differently than similarly situated white inmates at AUSP-Thompson.

## Federal Theories of Recovery

### A. Bivens

58. Plaintiff is suing all of the Defendants in their individual capacity for violating Plaintiff's Eighth Amendment right, as the Defendants were deliberately indifferent to Plaintiff's medical needs.

60. Plaintiff only seeks monetary damages from the Defendants as it pertains to this Bivens claim.

### B. 42 USC §§ 1985(3), 1986

61. Plaintiff is suing all of the Defendants in their individual capacity for depriving Plaintiff of equal protection of the laws based on Plaintiff's race.

62. "Equal protection of the laws" pertains to Plaintiff's Fifth Amendment right to due process and equal protection; his Eighth

Amendment right to be free from cruel and unusual punishment; and his rights that stem from 18 USCs 4042(a)(2) and (3) and 28 CFR 552.20-27.

63. Plaintiff only seeks monetary damages from these Defendants as it pertains to these conspiracy claims.

64. All of the Defendants acted outside of the scope of their authority in carrying out the acts and omissions detailed above, as all of the Defendants were motivated by personal bias.

## Caption (Cont.)

Nurse Garcia
Nurse Practicioner Ross
Health Service Administrator Pence
Correctional Officer Hernandez

## II. Defendants (Cont.)

D. Robert Williams
- Lieutenant

22 of 27

AUSP-Thomson

E. Dale Kietzman
Lieutenant
AUSP-Thomson

F. Kristen Bice
Nurse
AUSP-Thomson

G. Vanessa Garcia
Nurse
AUSP-Thomson

H. Mary Penie
Health Service Administrator
AUSP-Thomson

I. Maddie Hernandez
Correctional officer
AUSP-Thomson

J. Teresa Ross

Nurse Practicioner

AUSP- Thomson

## III. Previous Lawsuits (Cont.)

A. Landis v. Ebbert, 19-CV-477

B. March 15, 2019

C. Carlton Theodore Landis

D. Ebbert, Steebe, Savidge, Hackenburg, Bureau of Prisons, Connors,
Ormond, Sienkiewicz

E. Middle District of Pennsylvania

F. Christopher C. Conner

G. Unwarranted denial of recreation; Excessive force

H. Dismissed; Pending Appeal

I. June, 2022


A. Landis v. Lieutenant Wilson, 19-CV-1301

B. June 15, 2019

C. Carlton Theodore Landis

D. Wilson, Beacher, Troutman, Saylor, Leonawicz, Hurwitz, Bureau
of Prisons, Dees, Ayers

E. Middle District of Pennsylvania

F. Christopher C. Conner

G. Illicit use of force and application of restraints

H. Dismissed

I. June, 2022


A. Landis v. Bureau of Prisons, 19-cv-50290

B. October 31, 2019

C. Carlton Theodore Landis

D. Bureau of Prisons, Executive Office of United States Attorneys, A.T.F.

E. Northern District of Illinois

F. Phillip G. Reinhard

G. Freedom of Information Act

H. Pending

I. Pending


A. Landis v. Warden Rivers, 20-cv-50168

B. June 20, 2020

C. Carlton Theodore Landis

D. Rivers, Porter

E. Northern District of Illinois

F. Iain D. Johnston

G. Failure to protect

H. Dismissed

I. January, 2021

A. Landis v. Lieutenant Murton; 19-cv-50261
B. October 15, 2019
C. Carlton Theodore Landis
D. Murton, Kishine, Maybury, Bureau of Prisons; Rivers
E. Northern District of Illinois
F. Iain D. Johnston
G. Illicit use of force and application of restraints
H. Dismissed
I. June, 2021

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was sent to

      Monica V. Mallory
      United States Attorney's Office
      327 South Church Street
      Rockford, Illinois 61101

On this 3rd day of April, 2023.

Carlton T. Kundis 2NN49-036

27 of 27